[No. 13719.     Department Two. — December 31, 1891.]

## M. J. CONBOY ET AL., RESPONDENTS, v. HARVEY DICKINSON, APPELLANT.

LATERAL SUPPORT — EXCAVATION OF ADJACENT LOT — NEGLIGENCE — EVIDENCE — ABSENCE OF MALICE. — In an action to recover damages to the plaintiff's land, alleged to have been caused by the defendant's careless, negligent, and malicious excavation of an adjacent lot, the refusal of the trial court to allow the defendant, for the purpose of showing absence of malice, to testify as to whether he knew of any use his lot could have been put to if it had not been excavated, is not prejudicial error, it having been proved without conflict that he made the excavation for building purposes, and that his motive was proper, and not malicious, and it not appearing that the jury awarded any exemplary damages.

ID. — DAMAGES — QUESTION OF FACT. — The question as to what damage is done to a lot by the careless excavation of an adjoining lot is one of fact for the jury, and their verdict will not be disturbed if there is any evidence to sustain it.

ID. — INJURY TO LAND — WEIGHT OF HOUSE — NOTICE OF EXCAVATION — REASONABLE PRECAUTION. — Where land has been damaged by the excavations of a coterminous owner, and it is agreed that the damage was in no way caused by the weight of a house built upon the damaged land, it is immaterial whether or not the owner of the land excavated gave the coterminous owner previous reasonable notice of his intention to do the excavating, but the only question to be considered is, whether or not the former took reasonable precautions to sustain the land of the latter.

ID. — OBJECT OF NOTICE — DUTY OF EXCAVATING PARTY. — The object of the notice required by section 832 of the Code of Civil Procedure to be given by the owner of land to a coterminous owner, of the intention of the former to make an excavation upon his land for the purposes of construction, is, that the latter may have his attention called to the work, and, if necessary, shore up his wall or strengthen his foundation; and the fact that the notice was given does not relieve the excavating party from using ordinary care and skill, and taking necessary precautions to sustain the land of the coterminous owner.

ID. — NEGLIGENCE — LACK OF REASONABLE PRECAUTION. — Where an owner of land excavated his land to a depth of forty feet below the surface, at a season of the year when heavy rains might be expected, leaving the bank with a steep slope, and the earth at the top twelve or fourteen feet deep, and stopping his excavation only four feet from the division line, no such reasonable precaution to sustain the adjacent land is shown as will relieve the excavating owner from liability for damage to the adjacent land, caused by a sliding of the land.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*J. F. Cowdery*, for Appellant.

*W. & G. Leviston*, and *Thomas D. Riordan*, for Respondents.

BELCHER, C. — The plaintiffs owned a lot fronting on the south side of Vallejo Street, in the city of San Francisco. On the lot was a one-story dwelling-house, which covered the whole of it except a yard at the rear end about seven feet deep. The lot was on a level with the grade on the street in front of it. The defendant owned a lot fronting on the west side of Montgomery Street, which adjoined the south end of plaintiffs' lot. For the purpose of building on his lot, defendant commenced excavating it in 1888, and continued the work until one of the first days in March, 1889. At the front end of the lot he excavated it to a depth of eight or ten feet below the grade of Montgomery Street, and at the rear end to a depth of forty feet below its natural surface. Adjacent to the rear end of plaintiffs' lot he left undisturbed a strip about four feet wide, from which there was a slope extending out at its base about twenty feet from a perpendicular line from the top. On the surface the earth was about twelve or fourteen feet deep, and underneath was a sandy rock with seams running back through it. On the 11th of March, 1889, a heavy rain fell, and there was a slide into defendant's excavation, which extended back for some distance under the southeast corner of plaintiffs' house.

Plaintiffs brought this action to recover damages, caused by this slide, to their property, in the sum of three thousand dollars; and they alleged that defendant "carelessly, negligently, and maliciously excavated his lot close up to the south line and southeastern corner of plaintiffs' lot, to a depth of about forty feet below the surface of plaintiffs' lot, and without taking any precaution to sustain the land of plaintiffs"; that by reason of such excavation a large quantity of earth slid off the southeast corner of plaintiffs' lot, destroying, etc.

The defendant denied these averments, and denied that by reason of any excavation made by him on his lot plaintiffs had been damaged in the sum sued for, or in any sum whatever.

The case was tried by a jury, and a verdict returned in favor of plaintiffs for five hundred dollars, on which judgment was entered. The defendant moved for a new trial, which was denied, and then appealed from the judgment and order.

At the trial, "it was admitted by stipulation that the slide of land from plaintiffs' premises was not caused or assisted in any respect by the plaintiffs' house, which covered the entire lot except the rear seven feet, nor by any structure on said lot, nor by the weight of the house or structures." And at the conclusion of the evidence, "the court, among other things, instructed the jury that in case they found for the plaintiffs, the plaintiffs were only entitled to recover for the damage done the land, and not for damage done the house."

1. When the defendant was on the stand, as a witness in his own behalf, he was asked by his counsel: "Do you know of any use that lot of yours could be put to if it had not been excavated?" The question was objected to by plaintiffs as irrelevant and immaterial, and the objection sustained. It is now urged that this ruling was erroneous because the question was asked to meet the plaintiffs' charge that defendant made his excavation for a malicious purpose; and counsel says: "Defendant proposed to show absence of malice, by showing that his excavations were made for a useful purpose." But defendant did testify, without any objection, "I was engaged in excavating my lot for the purpose of building on it"; and his counsel say that "all the evidence showed that the defendant was grading his lot for a useful purpose." It must be admitted, therefore, that it was proved, without conflict, that his motive in making the excavations was proper, and not malicious. Besides, it does not appear that any exemplary damages were awarded by the

jury, and hence the question of malice becomes immaterial.

2. It is also urged that the verdict was contrary to the instructions of the court, because there was no evidence as to the damage done to the land as distinguished from the proved damages done to the house.  And it is said: " The evidence was all one way respecting damage to the land.  It was positively shown that the land had not been injured at all."

It is true, defendant testified: " This caving did not hurt it at all.  It did it good.  Conboy ought to pay me something for it.  Because it forced upon Conboy to fix his house, when it might tumble down.  It is now well supported; infinitely better than it ever was."  But the plaintiff Conboy testified that the house and lot cost him about twenty-three hundred dollars, and another witness testified that the value of the property before the excavation was about three thousand dollars, and at the time of the trial (September, 1889) about twelve or thirteen hundred dollars.  It was also proved that the premises were in the same condition at the time of the trial as at the time of the slide, except that the house had been braced up; and the highest estimate of the damage done to the house was $350.  Moreover, by consent of both parties, the jury, during the trial, visited and inspected the premises.

The question as to what damage was done to the lot was a question of fact for the jury, and looking at all the evidence, we cannot say that the verdict was contrary to the instructions of the court, and not justified.

3. It is further claimed that defendant had a right to excavate his lot for the purpose of building on it, and he used ordinary care and skill in making his excavations, and took reasonable precautions to sustain plaintiffs' land, and hence was not responsible for any damage done thereto.  This position is rested upon section 832 of the Civil Code, which reads: " Each coterminous owner is entitled to the lateral and subjacent support which his land receives from the adjoining land, subject

to the right of the owner of the adjoining land to make proper and usual excavations on the same for purposes of construction, on using ordinary care and skill, and taking reasonable precautions to sustain the land of the other, and giving previous reasonable notice to the other of his intention to make such excavations."

In *Aston* v. *Nolan*, 63 Cal. 269, the court, speaking of the law as it existed before the enactment of this section, said, quoting from Washburn on Real Property: "Every one has so far the right to have his own soil sustained by that of his neighbor, that the latter may not dig so near to the land of the former as to cause the same to fall into the excavation by its own natural weight. He ought to guard against such a consequence by proper care and the application of proper means of support. The right of lateral support in such case is an incident to the land itself. In the language of Rolle: 'It seems that a man who has land next adjoining to my land cannot dig his land so near to my land that thereby my land shall fall into the pit; and for this, if an action were brought, it would lie.'" And speaking of the notice provided for, it was said: "It is apparent that by giving the notice, a person excavating cannot relieve himself of any portion of the prudent care with which he must have conducted the work in the absence of the statutory provision requiring notice. His excavation must be such as would not have caused the soil of the adjacent lot to tumble in, had it remained in its natural state, not built upon. . . . . The object of the notice is, that the owner of the building may have his attention called to the work, and if necessary, shore up his wall or strengthen his foundation." And again: "Since the enactment of the code, the rights and duties of adjoining proprietors, with reference to the matter in hand, are substantially the same as they were before, provided notice is given by the party intending to excavate."

As to whether reasonable notice of his intention to excavate was given by defendant need not be considered, since it was stipulated that the slide which did the

damage was in no way caused by the weight of the plaintiffs' house.

The only question, then, is, Did the defendant take "reasonable precautions to sustain the land" of plaintiffs? He testified: "I used every precaution to sustain plaintiffs' land"; but the only precaution specified is, that he stopped his excavations four feet from their line. In view of the fact that he was excavating to a depth of forty feet below the surface, can it be said that this was a reasonable precaution? The answer must be in the negative. The work was completed early in March, and heavy rains at that season of the year might be expected. The bank was left with a steep slope, and the earth at the top was twelve or fourteen feet deep. Under such circumstances, it would seem that any reasonable man would naturally anticipate just what occurred, as the result of the excavation.

In our opinion, the motion for a new trial was properly denied, and we advise that the judgment and order be affirmed.

FOOTE, C., and FITZGERALD, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.