[Civ. No. 701. Fourth Appellate District.—June 13, 1931.]

THE CHARLES F. HARPER COMPANY, Respondent, v. DeWITT MORTGAGE & REALTY COMPANY (a Corporation) et al., Appellants.

16

Neil S. McCarthy, Earl L. Banta and Howard P. Hall for Appellants.

Henry O. Wackerbarth, Wheeler & Wackerbarth and ·Henry E. Carter for Respondent.

LAMBERSON, J., *pro tem.*—Plaintiff is a corporation engaged in the subdivision and sale of tracts of land in Los Angeles County. In 1924 it laid out and subdivided·a tract

of hillside land north of Hollywood Boulevard in Hollywood, known as Tract 6472, in the official records of Los Angeles County. In the process of subdividing the tract into lots for residential purposes, certain excavations were made and terraces constructed over the entire tract, and work of this nature was done on lots 8 and 9 of said tract, which were contiguous and separated by a terrace, the north line of lot 8 being coterminous with the south line of lot 9.

Early in January, 1925, defendants became the owners of lot 8 and shortly thereafter placed a steam shovel on said lot for the purpose of lowering the level of the lot so that it could be used with other lots owned by defendants in the same tract. The steam-shovel made an excavation of lot 8 to the depth of twenty feet or more below the level of the terrace between lots 8 and 9, the work being done during the rainy season and continuing for a period of three or four weeks. Within a few days after the withdrawal of the shovel, a large portion of the soil, composing lot 9, caved and fell off on to lot 8. After the cave-in only about one-third of lot 9, which was theretofore practically level, remained available for building purposes.

The plaintiff, who is respondent herein, began this action in November, 1926, for the purpose of recovering damages alleged to have been caused by the acts of the defendants in taking away, by means of the excavation work, the lateral support given by lot 8 to lot 9. The court gave judgment in favor of the plaintiff for the sum of $2,000, and found that prior to the month of January, 1925, lot 9 received a part of its lateral support from lot 8; that defendants in January and February, 1925, caused lot 8 to be so excavated and cut down as to leave a part of the land from lot 9 without sufficient or any lateral or natural support, and within four or five days after said excavation work was done, a large portion of lot 9 caved or slid away from lot 9 into the excavation on lot 8; that the slide would not have occurred had it not been for said excavation of lot 8, and that the excavation and terrace work previously made by plaintiff at the time said property was subdivided and terraced for residential lots, did not contribute to the slide; further, that neither of the defendants took any precautions to sustain the land comprising lot 9 after the excavation or cutting down of lot 8, and the slide on lot 9 was caused from

the natural weight of the soil thereon. There were no buildings on lot 9 except a small wall on the northerly portion thereof, which was not involved in the part which fell away. The soil on both lots and in that region was largely made up of decomposed granite, but the formation was of mixed character.

Considerable testimony was offered through expert witnesses, who were engineers and landscape architects, as to the cause of the slide. On the part of appellants, it was contended that the work formerly done by respondent on lots 8 and 9 uncovered a fault on lot 9, and that the earth on lot 9 would have, by reason of this fault, eventually caved in, and the excavation on lot 8 did not hasten or aid the slide which occurred. ██ The evidence as to the cause of the slide is conflicting but it is amply sufficient to support the findings of the court, and the findings consequently cannot be disturbed.

██ Appellants urge that they were not acting negligently in the work of making the excavation but acted in a prudent manner and according to the best engineering practice and that the slope made in the course of the excavation work was regarded as a safe slope; that appellants are not liable for damages in making the excavation where no negligence is shown. The case was tried by the court and findings were made by the court upon the theory that negligence, other than the neglect to furnish the support required by the statute, was not a factor to be considered in the decision of the case.

Section 832 of the Civil Code, relating to the question of lateral support, as enacted in 1872, read: "Each coterminous owner is entitled to the lateral and subjacent support which his land by nature receives from the land of the other."

As amended in 1874, it reads as follows: "Each coterminous owner is entitled to the lateral and subjacent support which his land receives from the adjoining land, subject to the right of the owner of the adjoining land to make proper and usual excavations on the same for purposes of construction, on using ordinary care and skill, and taking reasonable precautions to sustain the land of the other, and giving previous reasonable notice to the other of his intention to make such excavations."

There is no evidence that any precautions were taken by appellants to sustain the land of the respondent during the time the excavation work was being done or thereafter, and there was no evidence that any notice was given to the respondent by the appellants that the work was to be done. It appears from the evidence that representatives of the respondent were on the ground frequently, and there is some testimony to the effect that in conversations with the appellant DeWitt they questioned the safety factors of the work.

In the case of *Sargent* v. *Jaegling,* 83 Cal. App. 485 [256 Pac. 1116], it was declared the right of lateral support of land in its natural state is a natural one, and is not an easement; that it is one of the owner's enjoyments of property incident to his ownership, and is a right in the supported land, not in the supporting land. ▊ The common-law rule was not changed or enlarged by the adoption of section 832 of the Civil Code (*Sullivan* v. *Zeiner,* 93 Cal. 346 [20 L. R. A. 730, 33 Pac. 209]), except possibly in imposing upon the person intending to excavate, the duty of giving reasonable notice of his intention (*Aston* v. *Nolan,* 63 Cal. 269).

▊ At common law, coterminous owners have a natural right to the lateral support of each other's ground, and while a coterminous owner has the right to excavate his own ground for any lawful purpose, he must do so in such manner that his neighbor's ground will not, by its own weight or through the action of the elements, fall into the excavation. (*Aston* v. *Nolan, supra; Sullivan* v. *Zeiner, supra.*)

In the case of *Conboy* v. *Dickinson,* 92 Cal. 600 [28 Pac. 809], which was an action to recover damages resulting from negligence in excavating on defendant's land, and which terminated in a cave-in of plaintiff's lot and the damaging of his building located thereon, it was stipulated at the trial that the sliding of the soil from plaintiff's land was not caused or assisted in any respect by the presence of plaintiff's house thereon, or any other structure, or the weight thereof. The defendant, according to the testimony, excavated to a depth of forty feet and stopped his excavation four feet from the line of plaintiff's property. A judgment in favor of plaintiff was sustained because it could not be said that defendant used reasonable

precaution in making the excavation. See, also, *Porter* v. *City of Los Angeles,* 182 Cal. 515 [189 Pac. 105], in which it was held that a city in the construction of a tunnel was, as a coterminous owner, under obligation to use ordinary care and skill and to take reasonable precaution to sustain the land of others, adjoining which the tunnel was constructed.

In the case of *Green* v. *Berge,* 105 Cal. 52 [45 Am. St. Rep. 25, 38 Pac. 539], the court said:

"Independently of the statute the adjoining lot owner who caused the excavation to be made would be responsible for damage which might result, irrespective of the question of negligence in making the excavation. (*Gilmore* v. *Driscoll,* 122 Mass. 199 [23 Am. Rep. 312]; *Foley* v. *Wyeth,* 2 Allen (Mass.), 131 [79 Am. Dec. 771]; *Carlin* v. *Chappel,* 101 Pa. St. 348 [47 Am. Rep. 722]; *Richardson* v. *Vermont Central R. R. Co.,* 25 Vt. 465 [60 Am. Dec. 283].)

"Here the only neglect necessary to give a cause of action is the neglect to furnish the support required by the statute (*Aston* v. *Nolan,* 63 Cal. 269; *Conboy* v. *Dickinson,* 92 Cal. 600 [28 Pac. 809]), and, of course, to make the excavation otherwise must be negligence."

Under the authorities cited, the court was correct in its conclusion that the appellants were liable in damages to the respondent. In view of the findings of the court, which are amply sustained by the evidence, that the prior work done in terracing and excavating lots 8 and 9 did not contribute to, or cause the caving of lot 9, we consider it unnecessary to discuss at length the point made by appellants that such excavation work relieved them from further liability. There was no showing that the construction of terraces by excavating and grading added anything to the burden imposed upon lot 8. Although the top soil together with the vegetation thereon was removed, the entire property shared in the improvement, and so far as their relative conditions were concerned, no artificial factors were introduced, and they were still in their natural state at the time the excavation work on lot 8 was begun by appellants.

In each of the cases cited by appellants it appears that the excavation or changes made in the natural conditions of the property contributed to the damage which resulted. The general rule is expressed in 1 C. J. 1213, as follows:

"The right to lateral support for the soil in its natural state, or a right to recover for damages for its removal, will not be lost, however, by the mere placing of structures upon the land, where the structure is of such a character as not materially to increase the lateral weight and pressure, or where the building, even though of a substantial character, does not in fact contribute to the injury."

Lots 8 and 9 were under the same ownership prior to and at the same time the terrace work was done, and after that work was concluded, lot 9 had the same right to depend upon lot 8 for lateral support as it had before; and appellants, at the time of their purchase of lot 8, took the property with the same burden to give support to lot 9, as long as the burden was not thereafter added to by the owners of lot 9; consequently, in the absence of any act upon the part of the owners of lot 9 which increased such burden, after its acquisition by the appellants, the appellants owed the same duty to the owners of lot 9 as they would have owed had no change in the property, which was subdivided, ever been made.

For the foregoing reasons the judgment of the superior court is affirmed.

Jennings, Acting P. J., and Marks, J., concurred.